## CENTRAL SOYA CORP. *v.* JIM PARRISH ET AL

5-5618                                           471 S.W. 2d 775

Opinion delivered October 25, 1971

*James K. Young,* for appellant.

*Lawes & Schulze,* for appellees.

LYLE BROWN, Justice. The plaintiffs-appellees obtained judgment against appellant on the basis of failure to perform under an alleged contract. The decisive point for reversal is that the judgment is not supported by substantial evidence.

Appellees are Jim Parrish and wife, and Jimmy Parrish, the son. The Parrishes are engaged in the turkey growing business in Pope County. They sued Cargill of Arkansas, Inc., a turkey processor at Ozark, who had a processing contract with the Parrishes. The growers made Central Soya Corporation, appellant, a party to the suit, alleging that its field men who negotiated the processing contract failed in an oral agreement to have the turkeys picked up on the agreed pickup dates. The Parrishes also alleged Central Soya refused to permit the birds to be injected for air sac, resulting in the condemnation and down-grading of a large number of birds. The Parrishes obtained judgment against Cargill for

$2625 and against Central Soya for $5250. Cargill did not appeal.

Central Soya is the manufacturer of feed concentrates called Master Mix. The concentrates are sold to feed companies to be mixed with bulk ingredients and resold. Central's policy is to contact turkey growers and get the growers lined up with a processor which in this case was Cargill of Arkansas. At the same time Central Soya's field men arrange with the grower to get the grower's financing through a finance company owned by Central. Also the field men arrange with the grower to buy feed from a particular milling company in the grower's locale—a mill which handles Master Mix. Two agents of Central—Jackie Roberts and Foster Davis—contacted the Parrishes, who signed for the package deal of processing, financing, and purchase of feeds.

The crucial question in the case is whether Central Soya was bound by contract to see that the turkeys were picked up by the processor in accordance with the time schedule prerequisites set forth in the processing contract. The second question is whether it is shown by substantial evidence that Central is liable for the condemnation of unhealthy birds due to alleged defects in the feed.

The primary obligation for picking up the turkeys on schedule was that of Cargill of Arkansas because it was so provided in the written contract. Foster C. Davis, district manager for Central Soya, was called as a witness by the Parrishes. When he called on the Parrishes, he said he had a list of processors from which the growers could select and that the Parrishes preferred the Cargill contract. Davis said he did tell the Parrishes the birds would be picked up as per the schedule in the processing contract. The most that can be said of that statement was that Davis was expressing an opinion that Cargill, a reputable processor, would abide by the contract. Davis and Roberts did lend their assistance when on more than one occasion they were told by the Parrishes that Cargill had not picked up the turkeys on schedule. On receiving each such report they would

contact the processor and urge him to pick up the turkeys if possible. Davis said he knew of nothing else Central could do short of hijacking a truck. Mr. Parrish admitted that Central was not required to pick up the turkeys, but contended that Central was bound to see that it was done. (The evidence showed that the pick-ups were scheduled for the winter months and the weather was unusually inclement. The Parrishes' neighboring growers had to use dozers to pull the loaded trucks to the main roads.) The burden was on the Parrishes to establish an unconditional undertaking on the part of an agent or agents of Central Soya that the pickup dates would be observed under any and all circumstances. We find no substantial evidence, especially in light of Davis's testimony, that Central Soya undertook such an expressed obligation.

With respect to the Parrishes' claim for damages due to alleged down-grading of turkeys, young Mr. Parrish testified that he had no way of knowing why the turkeys were discounted by the processor. He did say he wanted them injected for air sac (common cold) but that Central Soya advised against it and suggested that they have the feed company to add aureomycin to the feed. We cannot tell from the record, except by pure speculation, whether the advice was good or bad, and if bad, the loss directly attributable thereto.

Reversed and dismissed.

BYRD, J., dissents.